Mr. Bowles, let me just make sure your colleague on the other side is on. Ms. Appleton, are you on? Yes, I am. Should I put on video? It's up to you. I just wanted to make sure you were there. Thank you. Mr. Bowles, you can proceed. Thank you, Your Honor. My name is Christopher Bowles. I'm the attorney for plaintiff appellant Stephen Barrere, who appeals from the final determinations denying his September 2014 application for social security disability and a January 2015 application for a supplemental security income. Mr. Barrere is disabled due to the effects of a traumatic brain injury sustained in May 2011, when he, as an intoxicated driver, was involved in a major motor vehicle accident, which claimed the life of his friend and passenger. Since that accident in May of 2011, he's been described as irritable, short-tempered with people. He testified that he would scream at people and curse at people, but he himself did not consider this to be a violent outburst. He explained that he would get into emotional arguments with co-workers or people on just about anything. He introduced evidence from a treating psychiatrist who had known him for some time, since at least 2012, Dr. Stanley Hertz. And Dr. Hertz provided an opinion in April of 2017, which delineated the areas in which he felt Mr. Barrere would have significant trouble in the workplace, including extreme limitations in understanding and remembering short and simple instructions, responding appropriately to requests. The district court does a pretty thorough analysis of Dr. Hertz's report and notes a number of shortcomings and concluded that the ALJ was entitled not to give it much weight because of those shortcomings. How do you deal with that? We address that in our reply brief, Your Honor, because as noted in our brief, the commissioners now filed a supplemental record, additional evidence, which should have been in the record, that completely undermines, we believe, the district court's interpretation. The district court was under the impression that Dr. Hertz didn't really know Mr. Barrere. He didn't know he had trouble with noncompliance. The district court believed that Mr. Barrere, excuse me, believed that Dr. Hertz was ill-informed that he had a history of use of alcohol and drugs, the drugs being marijuana. But that's not true because with the introduction of those treatment records, we see that Dr. Hertz was well aware of Mr. Barrere's long history. Those criticisms are not put into play. We're in a very unusual situation where at the court of appeals level, we're now measuring for the first time the treatment notes from the treating psychiatrist against his opinion. This should have been done by the administrative law judge at the hearing. He didn't do it. He didn't acknowledge Dr. Hertz's report at all. So the district court was speculating that this would not have made a difference because there was no treatment history. But that itself was not true either, right? Because we know that we now know that those records were obtained by Social Security very early on. Social Security labeled them as an exhibit, but due to some error, they were not made part of Exhibit 6F. 6F says this is the records of Dr. Hertz. But when we go to 6F in the record at 281 to 286, it's in fact a repeat of a report by Dr. Pakalakis, if I'm pronouncing that correct. And so this is the problem with Mr. Barrere's case. The Social Security regulations emphasize the critical importance of an opinion from a treating source. Dr. Hertz is a treating source. He treated him in 2012, 14, and 16. So Dr. Hertz knows this individual. Dr. Hertz has given very clear opinions, which are in fact supported by the record, not detracted by the record. And that's really supposed to be the starting point. There was substantial evidence in the record to show that Mr. Barrere was not disabled. A number of findings, objective findings. And why should we not defer to the commissioner's resolution of the conflicting evidence? Because there is evidence in the file, neuropsychological examinations, which talk about his cognitive strengths. He does have cognitive strengths. He does well on these standardized tests. But that's not the area that he's having trouble in. He's having trouble in his emotion and his conduct. And the report from Dr. Cindy Brightman in July of 2017, just two months after the date of the judge's decision, the appeals counsel says, we're not even going to consider this because it's after the date of the ALJ's decision and it's not relevant. That's an inaccurate statement that an opinion by someone who sees someone two months later, unless there's been some interval change, this has to be relevant to the earlier period of time. Dr. Brightman says that it's very difficult to have a fluent conversation with Mr. Barrere. He dissected each part of the conversation and debated the meaning, intention, and history of what is being discussed. And that's at page 24 of the record. Could you address Dr. Amigo's report, where he talked about working with Mr. Barrere to develop a plan for his educational and career goals. And I think part of that was stemming from his having earned a black belt and volunteering to teach kids. All of those things seemed like he had the capability of pursuing, developing, and pursuing those goals. Yes. And I think someone, the ALJ misinterpreted that as a statement that he was not disabled. Dr. D'Amico never says that. Dr. D'Amico points out that he has the potential for rehabilitation, which we don't dispute. After his injury, he was injured in his sophomore year at college. He later went on and completed an associate's degree, which I understand is a two-year degree. Well, most of it would have been completed before his accident, right? So two years after his accident in 2014, he completes the associate's degree. He is motivated to be employed. He did seek jobs. He went back to the Greek restaurant and they said, you're different than the way that you were before. We can't have you around here. He tried another restaurant after that and was let go for having a bad attitude. He wants to work, but he can't because he has these interpersonal conflicts with everyone that he comes to meet with. And not acknowledging Dr. Brightman's very clear statement about how difficult it is to have a conversation with this standardized test if you can't be in the same room with him without getting into a conflict or kicking the garbage can. And that's what the record bears out, Your Honors. Thank you. I've reserved two minutes for rebuttal. That's fine. Thank you. Ms. Appleton? Morning. My name is Candace Appleton and I'm an assistant United States attorney in the Eastern District of New York. And I'm here today representing the Commissioner of Social Security. Could you address, this was raised in the reply brief, the point about the Exhibit 6F and the absence from the record and the impact? Yes. Well, I think the agency certainly, this came up at the Second Circuit. Mr. Bowes has represented since day one. And I have been told that these records were in before the Administrative Law Judge and they were in before the Appeals Council. However, when the record was put together for federal court, that was the point at which they were mixed up with another exhibit. So we promptly set about getting those records so that I could review them. And certainly, if I had reviewed them and found them somewhat consistent with Dr. Hertz's opinion, we may not be here today. But a careful reading of the evidence in those four pages of notes, Dr. Hertz only treated him five times in 2011, saw him once in 2013, once in 2000, twice in 2014. And then Mr. Barrera came back in close proximity to the hearing in 2017, after not seeing him for three years, and asked to get an opinion. The opinion just does not jive with all the other evidence in the record or the notes. So these records were actually before the ALJ, before the Appeals Council, and the error was in putting together the appendix for this court? That is what the I have no reason to question it or to validate it. But I do know that in 2014, Dr. Hertz did a practically normal mental status exam. He said plaintiff had good judgment, average intelligence, good insight, good vocabulary, no concentration problems, no attention span problems. So that evidence certainly, as well as all the other evidence in the record. And again, as I think you mentioned, Judge Kogan, as always, did a wonderful job summarizing what he found to be the overwhelming substantial evidence in the record. We had Dr. Strassner, we had at least two neuropsych exams that did not portray an image of an individual that could not work in a low stress job. The RFC found by the commissioner is a very limited mental RFC, low stress environment, unskilled tasks, only occasional decision making, only occasional changes in the work setting, only occasional interaction with colleagues and the co-workers. And certainly the evidence from Dr. Strassner, the neuropsych exams, he was examined by Dr. Shapiro and Tesler. He got a perfect score on a mini mental health examination, full scale IQ. And I think the judge, correctly so, was quite impressed by his daily activities that consistently, even though he did a tragic car accident in 2011, Dr. Tesler said the brain MRI, whatever abnormalities were there, that he was not being affected by them. He did go on to get an associate's degree with a 3.5 average. He taught karate. He apparently participated in the Nassau Community College wrestling team. He got a black belt in Brazilian jiu-jitsu. He taught karate to students since 2015. This is not the record of somebody who was unable to work at the age of 19. And in my position, I think certainly the commissioner's decision should be upheld in this case. Thank you. Mr. Bowes, you have some rebuttal time. Yes, your honor. I would point your attention to the record just to demonstrate the way that the record was compiled. If you look at pages 333 and then 334, the way that the administrative law judge marks up the exhibits is, you'll see at the top right-hand corner, it's 18F at Exhibit 333. And that's how all of these exhibits are supposed to be tagged. The very next page, 334, again, this is Exhibit 19 in the record, but it's not tagged. It's not exhibited. And this was one of the problems with the file. I don't know whether or not Judge Kilgannon saw the records that were supposed to be Dr. Hertz's record at 6F. We know that he didn't discuss Dr. Hertz's opinion in his decision at all. He didn't discuss the records. He did not discuss the opinion, the April opinion. The district court- How do you deal with the facts that he got an brain injury? Yeah, he had a traumatic brain injury, and he had access to some of the skills and things that he had before the accident. He went to Hofstra University's first year on a scholarship for wrestling. So we know he was a wrestler. He fell back on the skills- But he could do all those things, but he couldn't do a low-stress job. He can't interact effectively with people. And that's what Dr. Hertz says. That's what Dr. Brighton says. That's what Dr. Barty says. He's got a significant problem. It's resistant to treatment. He doesn't want to take psychotropic medications, and he lacks insight into the nature and effects of those decisions on his ability to function. Thank you. The court will reserve decision. Thank you, Your Honors. Thank you, Your Honors.